# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| MARGARET RAE FOSTER,<br><br>    Plaintiff,<br><br>vs.<br><br>CERRO GORDO COUNTY, an Iowa Municipal Corporation, et al.;<br><br>    Defendants. | No. C14-3013-LTS<br><br>ORDER ON THE COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Plaintiff Margaret Rae Foster commenced this lawsuit on January 7, 2014, by filing a state court petition and jury demand (Doc. No. 3) in the Iowa District Court for Cerro Gordo County. The defendants then filed a notice of removal (Doc. No. 2) to this court on March 3, 2014. Foster filed an amended complaint (Doc. No. 21) on July 25, 2014. As amended, the complaint names the following defendants: Cerro Gordo County, the City of Mason City, Roungaroun Phaiboun, Josh Stratmann, Brandon Neidermayer, Additional Unidentified Mason City Police Department Officers or Employees, Kevin Pals, Shad Stoeffler, Terry Allen-Burns, Justin Faught, Chad Harkema, Rusty Pals, Brenda Crom, Marc Kappmeyer and Additional Unidentified Cerro Gordo County Jail Staff. Doc. No. 21 at 1-2. Foster asserts the following counts:

    I.    Negligence

    II.    Intentional[1]

---

[1] That is, in fact, the entire title of Count II. Doc. No. 21 at 3.

    III.    Intentional Infliction of Emotional Distress

    IV.    Violation of Civil Rights

Doc. No. 21. Foster seeks compensatory and punitive damages as well as attorney fees and other relief. *Id*. at 6.

Foster alleges two, virtually independent, sets of circumstances. The first relates to her arrest on January 19, 2012. *Id.* at 2, ¶ 3. She alleges that three officers of the Mason City Police Department used excessive force, causing a fracture dislocation to her elbow and other injuries. *Id.* Foster's claims based on these allegations are directed at the City of Mason City, Roungaroun Phaiboun, Josh Stratmann, Brandon Neidermayer and "Additional Unidentified Mason City Police Department Officers or Employees" (collectively, the City Defendants).

The second set of circumstances relates to events that occurred after Foster was booked into the Cerro Gordo County Jail (Jail). *Id.*, ¶ 5. Foster alleges that even though she was in obvious need of medical attention, Jail staff delayed and/or denied necessary medical care. *Id.* Foster's claims based on these allegations are directed at Defendants Cerro Gordo County, Kevin Pals, Shad Stoeffler, Terry Allen-Burns, Justin Faught, Chad Harkema, Rusty Pals, Brenda Crom, Marc Kappmeyer[2] and "Additional Unidentified Cerro Gordo County Jail Staff" (collectively, the County Defendants).

Upon the unanimous consent of the parties, this case has been assigned (Doc. No. 10) to me pursuant to 28 U.S.C. § 636(c)(3). The County Defendants have now moved for summary judgment (Doc. No. 37). Foster has filed a resistance (Doc. No. 38) and the County Defendants have filed a reply (Doc. No. 41). No party has requested oral

---

[2] Kappmeyer has been sued as "Marc Kappmeyer." Doc. No. 21. In various filings, the County Defendants have spelled his first name as both "Marc" and "Mark." *See, e.g.*, Doc. Nos. 29, 37.

argument and, in any event, I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted.

## II. UNDISPUTED FACTS

Based on the parties' respective filings, I find that the facts set forth below, unless otherwise noted, are undisputed for purposes of the County Defendants' motion for summary judgment.

***Relevant Parties.*** Foster is a resident of Cerro Gordo County, Iowa. During the relevant time period, Kevin Pals was the Sherriff of Cerro Gordo County, Stoeffler was the Jail Administrator at the Cerro Gordo County Jail (Jail), Allen-Burns was a nurse at the Jail and Faught, Harkema, Rusty Pals, Crom and Kappmeyer were corrections officers at the Jail.

***Relevant Events.*** On January 19, 2012, shortly after 2 a.m., Mason City Police Officers arrived at a residential apartment unit and were met by Foster, who was intoxicated. During this encounter, officers tried to explain that Foster was "banging" on the door of an apartment that was not hers. Ultimately, Foster was arrested and transported to the Jail. While the exact time of Foster's arrival is disputed, it occurred at some point between 2:18 a.m. and 3:43 a.m. The parties agree that she was transported directly to the Jail, without any diversion. After her arrival, Foster's blood alcohol content was measured to be .237.

It is undisputed that Foster mentioned an injury to her arm to corrections officers after booking. However, the parties dispute the details of her statement. The County Defendants claim Foster stated that her arm was painful but that she would not state how she injured it. Foster claims she told the corrections officers that her arm was broken and requested to go to the hospital. Additionally, the parties dispute whether Foster received an icepack before seeing a nurse. The parties agree, however, that Nurse

3

Allen-Burns examined Foster's arm at 8:40 a.m. At that time, Allen-Burns noted some evidence of swelling and bruising, wrapped Foster's arm, applied ice and administered ibuprofen. Allen-Burns told Foster that while her arm was badly bruised, it was likely not broken.

The Jail's records indicate that Allen-Burns saw Foster again at 11:50 a.m., replaced her ice pack, administered additional ibuprofen and Tylenol, advised her that she was likely to be released soon and encouraged her to follow up with her primary care physician upon release. Foster denies that this follow-up examination occurred. However, she does acknowledge that she saw Allen-Burns again before being released.

Foster was released from the Jail at some point after 4:00 p.m. on the same day.[3] She was then seen at a local emergency room, where x-rays revealed a dislocated right elbow and a closed, non-displaced fracture of the radius with swelling. On January 20, 2012, she was examined by Dr. Richard Rattay. Dr. Rattay determined that surgery was necessary but that it should be delayed due to swelling. Foster underwent surgery on January 25, 2012. Dr. Rattay has opined that Foster's overall outcome is worse due to the delay between her injury and treatment.

In relevant part, the Jail's policy provides (1) that inmates will receive prompt medical care for injuries, (2) that nurses will be available from 8:00 a.m. until 4:00 p.m. and will be on call twenty-four hours a day, (3) that medical care determinations in non-emergency cases will be made by licensed nurses and (4) that inmates with objectively serious medical needs shall receive necessary medical attention if the injury is known to correctional officers. The policy further states that a serious medical need is one that

---

[3] The County Defendants state that Foster was released on January 20, 2012. Doc. No. 37-2 at 4, ¶ 12. Foster acknowledges that her release occurred on January 19. Doc. No. 38-2 at 4, ¶ 13. Medical records show that she went to the emergency room on the 19th, not the 20th. *See, e.g.*, Doc. No. 37-3 at 13.

has been diagnosed by a physician as requiring treatment or is one that is so obvious that even a layperson would easily recognize the need for a physician's attention.

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties'

differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

### IV. ANALYSIS

The amended complaint is hardly a model of clarity. However, when interpreted with the benefit of the parties' summary judgment briefing, it appears that the only federal claim Foster asserts against the County Defendants is set forth in Count IV, which

includes a claim brought pursuant to 42 U.S.C. § 1983 that the County Defendants were deliberately indifferent to Foster's serious medical needs while she was an inmate at the Jail. *Id*. at 5-6.

In seeking the entry of summary judgment in their favor, the County Defendants raise certain arguments that are more akin to "failure to state a claim" arguments under Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 37-1 at 4-6. At this stage, it is not appropriate to consider the adequacy of Foster's allegations. *See* Fed. R. Civ. P. 12(b) (any motion raising the defense of failure to state a claim must be made before pleading). Instead, I will consider the entire summary judgment record, not just Foster's amended complaint, in determining whether the County Defendants are entitled to judgment in their favor as a matter of law.

The County Defendants contend that the record does not support Foster's claim that they violated her rights under the United States Constitution by being deliberately indifferent to her medical needs. They also contend that the individual County Defendants are entitled to qualified immunity from suit. Finally, they argue that the court should decline to exercise supplemental jurisdiction over Foster's state law claims against them. Foster disputes each argument. I will address them separately.

A.   *Foster's Deliberate Indifference Claim*

   1.   *Applicable Standards*

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban on cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Where, as here, the inmate was a pretrial detainee as opposed to a convicted offender, the Eighth Circuit Court of Appeals analyzes the inmate's Section 1983 claim under the Due Process Clause of the Fourteenth Amendment, not under the Eighth Amendment. *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009) (citing

*Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007), *cert. denied*, 552 U.S. 826 (2007)). "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Id.* at 979-80 (quoting *Kahle*, 477 F.3d at 550).

To prevail on a claim of deliberate indifference, an inmate must show "that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). Under the first requirement, an objectively serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)).

Under the second requirement, an official is deliberately indifferent "if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). "Although the level of blameworthiness must rise above negligence, a plaintiff does not have to show that the prison officials acted 'for the very purpose of causing harm or with knowledge that harm w[ould] result.'" *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (quoting *Farmer*, 511 U.S. at 835). Similarly, a claimant's "mere disagreement with treatment decisions does not rise to the level of constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). The claim that an officer deliberately disregarding a risk is evaluated "in light of the information he possessed at the time, the practical limitations of his position and alternative courses of action that would have been apparent to an official in that position."

*Letterman*, 789 F.3d at 862 (quoting *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000)).

### 2. Analysis

#### a. Did Foster have an objectively serious medical need?

The parties dispute whether Foster exhibited an objectively serious medical need while at the Jail. As noted above, Foster must show that her injury either (a) had "been diagnosed by a physician as requiring treatment" or (b) was "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos*, 73 F.3d at 176. Because there is no evidence that Foster's arm had "been diagnosed by a physician as requiring treatment," while she was at the Jail, the question is whether the injury was "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id*.

Foster argues that other courts have found that injuries requiring surgery constitute a serious medical need. *See* Doc. No. 38-1 at 7 (citing *Starbeck v. Linn County Jail*, 871 F. Supp. 1129, 1141 (N.D. Iowa 1991)). In *Starbeck,* Judge Bennett observed that "[f]ederal courts have frequently found that medical needs of prisoners which require surgery constitute serious medical needs." 871 F. Supp. at 1141 (citing cases). However, *Starbeck* did not hold that a *per se* rule exists such that a subsequent determination of the need for surgery conclusively demonstrates the existence of a serious medical need at the time of incarceration. Indeed, a medical condition is not *per se* obvious to a layperson even if it later results in death. *Jones v. Minnesota Dept. of Corrections*, 512 F.3d 478, 483 (8th Cir. 2008).

In arguing that Foster did not have an objectively serious medical need, the County Defendants rely on a booking questionnaire indicating that Foster reported having no broken bones. Doc. No. 37-5 at 15-16. While the questionnaire does indicate that

Foster reported arm pain, it states that she would not describe what was causing that pain. *Id.* Foster disputes this information and contends that she repeatedly requested medical assistance while at the Jail, that she was in "obvious pain" and that the swelling and bruising of her arm was readily apparent. *See, e.g.*, Doc. No. 38-4 at 55-58. Viewing the evidence in a light most favorable to Foster – as I must – I find that the record is adequate to permit reasonable jurors to find that Foster had an objectively-serious medical need while at the Jail.

### b. *Were any of the County Defendants deliberately indifferent?*

Foster alleges that the Jail's correctional officers were deliberately indifferent to her serious medical need and that the care ultimately provided by Nurse Allen-Burns also amounted to deliberate indifference. She further contends that Cerro Gordo County and its supervisory staff fostered the deliberate indifference through policies and inadequate training. The County Defendants contend that no deliberate indifference occurred.

### i. *The Correctional Officers*

Foster alleges that the correctional officer defendants (Faught, Harkema, Rusty Pals, Crom and Kappmeyer) were deliberately indifferent to her serious medical need by not providing her with immediate access to medical care. The County Defendants argue that the correctional officers acted appropriately under the circumstances.

At the outset, a claim of deliberate indifference is precluded if the record does not contain any verifying medical evidence that a delay resulted in a detrimental effect. *Coleman*, 114 F.3d at 785 (citing *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). Here, Foster has presented an opinion from Dr. Rattay that her overnight stay at the Jail "likely worsened her overall result and progressive arthritis." Doc. No. 38-4 at 51. As such, Foster has met this threshold requirement.

Next, Foster must show that the defendants "acted with a sufficiently culpable state of mind, namely, that they actually knew of, but deliberately disregarded [her] medical needs." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (internal citations and quotation marks omitted). To put it another way, deliberate indifference occurs when an official "knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Schaub*, 638 F.3d at 916 (citing *Farmer*, 511 U.S. at 847). Deliberate indifference is akin to criminal recklessness and rises above the standard of gross negligence. *Id.* at 933.

At the summary judgment stage, "[the court] must take as true those facts asserted by plaintiff that are properly supported in the record." *Pool v. Sebastian County, Ark.*, 418 F.3d 934, 944-45 (8th Cir. 2005) (quoting *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001)). While Foster presents no evidence that any particular correctional officer defendant actually saw her injured arm, she does allege that she repeatedly cried out in pain and asked for help. Doc. No. 38-4 at 28-30, 53-58. Assuming the truth of this allegation, the jury could find that each correctional officer on duty at the time had knowledge that Foster had an arm injury. The question is whether the record allows a finding of deliberate disregard.

Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed. *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) (citing *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006)). This is where Foster's claim against the correction officers fails. The evidence does not support a finding that a reasonable person would have understood, from the available facts, that Foster needed immediate medical treatment. Nor does the evidence support a finding that the actions of the officers were so dangerous that knowledge of the risk may be presumed. Even if each of the

correctional officer defendants saw Foster's arm, and heard her complaints of pain, there is no evidence suggesting that a reasonable person would have realized that waiting a few hours for a nurse to arrive was dangerous. Indeed, even when Nurse Allen-Burns examined Foster – approximately six hours after Foster arrived at the Jail – she did not diagnose a fracture or conclude that hospitalization was necessary. Instead, Allen-Burns observed swelling and bruising and treated Foster's arm with ice.[4]

The fact that a trained medical professional examined Foster's arm and detected no fracture or other serious condition requiring advanced care weighs heavily against Foster's claim of deliberate indifference on the part of the correctional officers. The record contains no evidence indicating that before Allen-Burns arrived, any officer perceived a dangerous condition and deliberately ignored it.[5] Once Allen-Burns became involved, the correctional officer defendants were entitled to assume that she would provide appropriate care. "A prison official may rely on a medical professional's opinion if such reliance is reasonable." *McRaven*, 577 F.3d at 981 (citing *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002)); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) ("Except in the unusual case where it would be evident to a

---

[4] This is consistent with the subsequent emergency room records, which indicate that Foster presented with swelling and tenderness and was able to move her fingers. Doc. No. 37-3 at 13. The records do not describe an obvious, critical injury, such as an open fracture or disfigurement.

[5] Foster claims that the correctional officers responded to her cries for help "by shutting off the intercom to her cell." Doc. No. 38-3 at 2, ¶ 4. However, the portions of the record that she cites for this allegation do not support it. She generally cites her own amended complaint, which is not verified. Doc. No. 21. She also cites to portions of her deposition testimony and interrogatory answers. Doc. No. 38-3 at 2, ¶ 4. The referenced portions contain no allegation that the officers shut off the intercom to Foster's cell, let alone an explanation as to how Foster obtained such information. As such, Foster's allegation that the officers shut off the intercom to her cell is an unsworn statement that cannot be considered at the summary judgment stage. *See, e.g.*, *Risdal v. Nixon*, 589 Fed. Appx. 801, 803 (8th Cir. 2014) (per curium) (citing *Mays v. Rhodes*, 255 F.3d 644, 647 (8th Cir. 2001)).

layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.") (citation omitted).

On this record, I conclude reasonable jurors could not find that the correctional officer defendants acted with deliberate indifference to Foster's serious medical needs. As such, I will grant summary judgment in favor of defendants Faught, Harkema, Rusty Pals, Crom and Kappmeyer on this claim.

### ii. *Nurse Allen-Burns*

Foster contends that Allen-Burns was deliberately indifferent to her serious medical needs by conducting only a "cursory examination" and dismissing "the potential seriousness of the injury." Doc. No. 38-1 at 9. Based on the evidence already discussed above, however, I find that no reasonable jurors could determine that Allen-Burns acted with deliberate indifference.

Deliberate indifference requires more than gross negligence or a disagreement with the treatment decisions. *Slack v. Turntine*, 608 Fed. Appx. 442, 443 (8th Cir. 2015). "Negligent misdiagnosis does not cause a cognizable claim under § 1983." *McRaven*, 577 F.3d at 982. Thus, mere medical malpractice is not actionable under the Eighth Amendment. *Id.* (citing *Popoalli v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). However, "medical treatment may so deviate from the applicable standard of care as to evidence a physician's deliberate indifference." *Id.* (quoting *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001)).

Here, Allen-Burns examined Foster's arm, concluded that it likely was not broken and determined that no x-ray was necessary. She then provided Foster with an icepack, an ace wrap and pain medication while advising her to follow up with her physician upon release. There is no evidence that Allen-Burns actually perceived the injury to be more

severe and purposely withheld necessary treatment. At worst, Allen-Burns was negligent in failing to comprehend the severity of the injury. Such an error does not rise to the level of deliberate indifference. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (finding that "[a] medical decision not to order an x-ray" is not "cruel and unusual punishment" and "at most it is medical malpractice"); *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 632 (8th Cir. 2009) (no deliberate indifference when nurse determined inmate should be sent for an x-ray in a day or two based on her determination that the injury wasn't urgent); *Johnson v. Busby*, 452 F.3d at 971 (only negligence despite the fact that an x-ray was performed a month after nurse determined hand might be broken).

The situation here is similar to that in *Slack v. Turntine*, No. 4:13-CV-1170, 2014 WL 7335165 (E.D. Mo. 2014), *aff'd*, 608 Fed. Appx. 442 (8th Cir. 2015). In that case, a nurse examined an inmate's injured finger and, believing no fracture to be present, did not order an x-ray or splint. 2014 WL 7335165, at *5. The finger was later determined to be broken. *Id*. In rejecting the plaintiff's claim that the nurse acted with deliberate indifference to a serious medical need, the court stated:

> The records show that although Nurse Pratt misdiagnosed plaintiff's injury as a sprain, she treated his symptoms. He was given pain medication and instructed to apply ice. She also provided him documentation to excuse him from his work assignment for several days. He was told to follow up with medical if his pain continued. Plaintiff has submitted no evidence that this misdiagnosis was outside the standard of care, much less that it was deliberately indifferent to his medical needs. While plaintiff's treatment involved a misdiagnosis, a misdiagnosis does not rise to the level of deliberate indifference.

*Id*. (citing *McRaven*, 577 F.3d at 982). The same is true here. In hindsight, it is clear that Nurse Allen-Burns misdiagnosed Foster's injury. However, there is no evidence that she was deliberately indifferent. As such, Allen-Burns is entitled to summary judgment on that claim.

### *iii.* *The Other County Defendants*

Foster does not claim that Sheriff Pals or Jail Administrator Stoeffler participated directly in the alleged deprivation of her constitutional rights by jail staff or Nurse Allen-Burns. Instead, she alleges liability against them, and against Cerro Gordo County itself, based on *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978). Under *Monell*, local governments and government officials acting in their official capacities are liable for constitutional violations that either (a) are committed pursuant to official custom, policy or practice or (b) occur because of inadequate training or supervision. *See Monell,* 436 U.S. at 690-91; *see also Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (liability under Section 1983 requires causal link to deprivation of rights). Because I have concluded that Foster's constitutional rights were not violated by the correctional officers or Nurse Allen-Burns, it is unnecessary to address Foster's attempt to impose *Monell* liability on the County, Sheriff Pals or Administrator Stoeffler. Like the other County Defendants, those defendants are entitled to judgment in their favor as a matter of law on Foster's deliberate indifference claim.

### B. *Qualified Immunity*

As an alternative argument, the individual County Defendants contend that they are entitled to qualified immunity. "Qualified immunity protects a government official from liability in a [section] 1983 claim unless his or her conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known." *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 849 (8th Cir. 2006) (quoting *Pool*, 418 F.3d at 942). "To overcome qualified immunity, plaintiffs must demonstrate both that '(1) there was a deprivation of a constitutional or statutory right, and (2) the right was clearly established at the time of the deprivation.'" *Davis v. County of Gabe,*

15

*Nebraska*, 807 F.3d 931, 936 (8th Cir. 2015) (quoting *Parker v. Chard*, 777 F.3d 977, 980 (8th Cir. 2015)). Here, I have already determined that Foster has failed to establish that any of the County Defendants deprived her of a constitutional or statutory right. As such, the individual County Defendants are entitled to qualified immunity. This provides an alternative basis for granting summary judgment in their favor.

### C. *Foster's State Law Claims*

The County Defendants argue that upon the dismissal of Foster's federal constitutional claim against them, I should decline to exercise supplemental jurisdiction over her state law claims, as well. Foster's only argument to the contrary is that there is no reason to dismiss the state law claims because the federal constitutional claim should not be dismissed. Doc. 38-1 at 23. She does not argue that I should retain jurisdiction over the state law claims against the County Defendants even if I dismiss the federal claim. *Id.* By failing to advance an argument that the state law claims should remain even if the federal claim is dismissed, I find that Foster has waived any such argument. *Cf. Cole v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers*, 533 F.3d 932, 936 (8th Cir. 2008) (a party may not assert arguments on appeal that were not presented to the district court in opposing summary judgment).

Even if Foster did not waive this issue, I would find it appropriate to dismiss the state law claims against the County Defendants. Supplemental jurisdiction exists only to the extent that the state law claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). As set forth above, this action presents two separate sets of circumstances. Foster's claims against the City Defendants arise from the events surrounding her arrest, as she alleges that excessive force was used, thus causing serious injury. *See, e.g.*, Doc. No. 21 at 2, ¶ 3. Her claims against the County Defendants arise from the events

that occurred after she was placed into their custody at the Jail.  *Id.*, ¶ 5.  Foster does not contend that the County Defendants caused her initial injury, but instead that they failed to provide adequate medical care.   Likewise, she does not appear to argue that the City Defendants are liable for what happened, or did not happen, after Foster was booked into the Jail.

In short, Foster asserts two independent sets of claims in a single case.  If she had never asserted a federal claim against the County Defendants, it is doubtful that this court could have exercised supplemental jurisdiction over any state law claims against those defendants.  In other words, the state law claims against the County Defendants do not "form part of the same case or controversy" as Foster's federal claim against the City Defendants.

Moreover, even if supplemental jurisdiction exists over the state law claims against the County Defendants, I would decline to exercise that jurisdiction.  This situation is somewhat unique in that it does not fit perfectly within Section 1367(c)(3), which provides that the court may decline to exercise jurisdiction over a state law claim that would otherwise fall within the court's supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Under Section 1367(c)(3), "[a] district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."  *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)).

Here, I am not dismissing all federal claims, just the sole federal claim against each of the County Defendants.  All claims against the City Defendants, both state and federal, remain.  Section 1367(c)(3) does not specify if it is meant to apply when the court has dismissed all federal claims against some parties, but retains a federal claim against other parties.  Some district courts have declined to exercise jurisdiction on a

party-by-party basis. *See, e.g.*, *Germano v. Dzurenda*, No. 09 Civ. 1316, 2011 WL 1214435, at *20 (D. Conn. Mar. 28, 2011) (dismissing without prejudice state claims against twelve defendants once federal claims against those same twelve defendants were dismissed, even though federal claims in the case remained viable against others); *Lewis v. Sieminski*, No. 08 Civ. 728, 2010 WL 3827991, at *9 (D. Conn. Sept. 22, 2010) (declining to exercise supplemental jurisdiction over state law claims against defendants after dismissing the federal claims against them, even though federal claims against another party continued). In *Rosen v. County of Suffolk*, 121 Fed. Appx. 885 (2d Cir. 2005), the Second Circuit Court of Appeals entered a remand order that stated: "In the event that any of the defendants named in any of the state law claims over which the District Court declined under 28 U.S.C. § 1367(c)(3) to assert supplemental jurisdiction is a party to any claim remaining before the District Court following this remand, the Court should reconsider its election to decline jurisdiction over claims *involving such party*." *Id.* at 887 [emphasis added].

Other courts have interpreted Section 1367(c)(3) to be inapplicable when any federal claims remain in the litigation, even if those claims are asserted only against other parties. *See, e.g.*, *Moore v. Natwest Mkts.*, No. 96 Civ. 1166, 1996 WL 507333, at *3 (S.D.N.Y. Sept. 6, 1996) ("Section 1367(c) does not apply when any federal claim exists in the lawsuit against any of the parties."); *Rophaeil v. Aiken Murray Corp.*, No. 94 Civ. 9064, 1996 WL 221567, at *2 (S.D.N.Y. May 2, 1996) ("Since the Court has not dismissed 'all' federal claims from this action … the plain language of this provision does not apply to the case at bar."). There appears to be no binding precedent on this issue.

I find dismissal of the state law claims against the County Defendants to be appropriate for three reasons. First, as noted above, Foster waived any argument against such dismissal by failing to address this situation in her resistance. Second, the state law claims against the County Defendants arise from facts and circumstances that

differ from those that form the basis of Foster's claims against the City Defendants. As such, the presence of a federal claim against the City Defendants does not confer supplemental jurisdiction over Foster's state law claims against the County Defendants within the meaning of Section 1367(a). Third, and at least under the unique circumstances present here, I find that Section 1367(c)(3) would permit this court to decline to exercise supplemental jurisdiction over the state law claims against the County Defendants, even if Section 1367(a) actually conferred such jurisdiction.

For these reasons, I will dismiss all remaining state law claims against the County Defendants without prejudice. Foster is free to present those claims in state court.

## V. CONCLUSION

For the reasons set forth herein, the County Defendants' motion for summary judgment (Doc. No. 37) is **granted**, as follows:

1. Foster's claims pursuant to 42 U.S.C. § 1983 against the County Defendants (Cerro Gordo County, Kevin Pals, Shad Stoeffler, Terry Allen-Burns, Justin Faught, Chad Harkema, Rusty Pals, Brenda Crom, Marc Kappmeyer and "Additional Unidentified Cerro Gordo County Jail Staff") are hereby **dismissed with prejudice**.

2. Foster's remaining claims against the County Defendants, all of which are state law claims, are hereby **dismissed without prejudice**.

3. Because this order disposes of all claims against the County Defendants, the County Defendants are hereby dismissed from this action.

4. This action will proceed as scheduled on all claims against the City Defendants (the City of Mason City, Roungaroun Phaiboun, Josh Stratmann, Brandon Neidermayer and "Additional Unidentified Mason City Police Department Officers or Employees").

**IT IS SO ORDERED.**

**DATED** this 28th day of January, 2016.

                                _____
                                LEONARD T. STRAND
                                UNITED STATES MAGISTRATE JUDGE